United States District Court
Southern District of Texas

**ENTERED**

July 27, 2026

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MARC MORALES, | § | |
| | § | |
| Plaintiff / Judgment Creditor, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-cv-3085 |
| | § | |
| NATIONWIDE INVESTIGATIONS & SECURITY, INC., ALLEN HOLLIMON, AND SONIA D. TIMS, | § | |
| | § | |
| Defendants / Judgment Debtors. | § | |

## ORDER

On July 20, 2026, the Court reconvened a hearing on Court-appointed Receiver James W. Volberding's (the "Receiver") Motions for Order to Show Cause (ECF Nos. 138, 140, 142) and the Court's subsequent Orders to Show Cause (ECF Nos. 154, 155, 156). The Court heard arguments from both parties. As discussed, the Court **ORDERS** that all deposits or checks for Nationwide Investigations & Security, Inc. ("Nationwide") be deposited with Nationwide's Chase Bank account or provided to the Receiver's Office. The Court further **ORDERS** that Ms. Caziere meet with the Receiver, at his office in Tyler, Texas, to provide any and all financial records for Nationwide.

I.   The Halcyon Property

Also at issue is the real property located at 2918 Halcyon Time Trail, Houston, Texas (the "Halcyon Property").  Currently pending before the Court is Allen Hollimon ("Hollimon") and Sonia Tims's ("Tims") (collectively, "Judgment Debtors") Motion to Vacate (ECF No. 182) and the Receiver's Motion for Turnover and Attachment Order (ECF No. 186).  Hollimon and Tims request that the Court vacate its previous Order (ECF No. 115), which authorized the Receiver to sell the Halcyon Property.  (ECF No. 182 at 2).

The Halcyon Property originally belonged to Tims's mother.  (*See id.* at 1).  The Receiver argues the Halcyon Property passed to Tims following her mother's death pursuant to Texas Estates Code § 101.001, which states that property devised by a will vests immediately upon death.[1]  (ECF No. 186 at 3).  For support, the Receiver relies on an affidavit that Tims filed in Harris County Probate Court that stated the Halcyon Property passed solely to Tims through the will of her late mother.  (*Id.* (citing ECF No. 186-3)).  On December 11, 2025, the Receiver moved for authorization to sell the Halcyon Property.  (ECF No. 111).  The Judgment Debtors did not file a response.  Pursuant to

---

[1] *See* TEX. ESTATES CODE § 101.001 ("*Passage of Estate on Decedent's Death*"), (a) Subject to Section 101.051, if a person dies leaving a lawful will: (1) all of the person's estate that is devised by the will vests immediately in the devisees; (2) all powers of appointment granted in the will vest immediately in the donees of those powers; and (3) all of the person's estate that is not devised by the will vests immediately in the person's heirs at law. (Section 101.051 pertains to child-support and other debts, which are not applicable in this case.)

2

Local Rule 7.4, failure to respond is taken as a representation of no opposition. S.D. TEX. LOCAL R. 7.4. As such, based upon Tims's affidavit and the lack of objection from the Judgment Debtors, the Court ordered the Halcyon Property transferred to the Receivership Estate and sold. (ECF No. 115).

The Judgment Debtors now argue the Halcyon Property is not Tims's property, and remains in the estate of Tims's mother, because the will has not been admitted to probate. (ECF No. 182 at 5 (citing TEX. ESTATES CODE § 256.001)). Further, the Judgment Debtors contend § 101.001 only applies if "a person dies leaving a lawful will" and that Tims's mother's will is facially invalid because it lacks two signatures from disinterested witnesses. (*Id.* at 6). Thus, the Judgment Debtors argue the question of title needs to be resolved by the probate court before this Court takes any action with the Halcyon Property. (*Id.* at 6–7).

"[F]ederal courts lack jurisdiction over proceedings that 'interfere with' state probate proceedings, assume general jurisdiction of the probate, or assume control of property in the custody of the probate court." *Lemery v. Ford Motor Co.,* 244 F. Supp. 2d 720, 725 (S.D. Tex. 2002) (collecting cases). To be

clear, the probate exception[2] does not apply in this case because the Court has federal-question jurisdiction under the Fair Labor Standards Act. *See Dearborn Life Ins. Co. v. Ramirez,* No. 1:23-cv-1060, 2024 WL 5371990, at \*3 (W.D. Tex. June 28, 2024) ("Because the Court has found that it has federal-question jurisdiction under ERISA, . . . the probate exception does not apply."). However, the dispute surrounding the ownership of Halcyon Property needs to be resolved by the probate court. Thus, to not "interfere with" any state probate proceedings, the Court **GRANTS** the Judgment Debtors's Motion to Vacate (ECF No. 182), **VACATES** this Court's previous Order regarding the Halcyon Property (ECF No. 115), and **DENIES WITHOUT PREJUDICE** the Receiver's Motion for Turnover and Attachment Order (ECF No. 186).

II.   The Receiver's Motions (ECF Nos. 194–195)

The Court also heard arguments on the Receiver's Motion for Authorization to Sell Company Assets and to Retain Specialized Personnel (ECF No. 194) and Motion for Supplemental Receivership Order (ECF No. 195). These motions relate to three corporations[3] that the Receiver refers to as

---

[2] "[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Curtis v. Brunsting*, 704 F.3d 406, 409 (5th Cir. 2013) (quoting *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006)).

[3] These corporations include (1) NetWRX3, Inc., (2) Hollimon Transportation Services, Inc., and (3) Lifeline Resources Group, Inc.

Nationwide's subsidiaries.  (ECF No. 194 at 1).  For support, the Receiver explains that an "'[a]nalysis of Nationwide's bank statements reveals that money flows freely between Nationwide's accounts and the accounts of these entities without any legitimate business purpose or documentation, rendering them subsidiaries or auxiliaries of Nationwide."  (ECF No. 195 at 7–8).  As such, the Receiver (1) seeks authorization from the Court to sell Nationwide and the corporations (ECF No. 194 at 14) and (2) requests a Supplemental Receivership Order assigning the alleged subsidiaries to the receivership estate (ECF No. 195 at 1).  For support, the Receiver relies on Texas Civil Practice and Remedies Code § 31.002, which is commonly referred to as the Texas turnover statute.  (*See* ECF No. 194 at 11–12); *Maiz v. Virani*, 311 F.3d 334, 342 (5th Cir. 2002).

In contrast, the Judgment Debtors contend the corporations are not subsidiaries of Nationwide, citing to the corporations' own public filings that "reflect no parent, no subsidiary, and no affiliation among the entities."  (ECF No. 212 at 3–4).  The Judgment Debtors add that these corporations are non-judgment debtors and that a turnover receivership "cannot liquidate the assets and operations of a separate corporation that was never sued and against which no judgment exists."  (*Id.* at 3).  Stated a different way, the Judgment

5

Debtors contend that "[a] judgment against a shareholder . . . does not make the corporation's assets available for turnover." (*Id.* at 4–5).

The Texas turnover statute is a procedural mechanism by which judgment creditors can reach assets of a judgment debtor that are otherwise difficult to attach or levy on by ordinary legal process. *See Beaumont Bank v. Buller*, 806 S.W.2d 223, 224 (Tex. 1991). The Texas Supreme Court has noted that "[t]he purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the debtor's control." *Id.* at 227. However, "Texas courts do not apply the turnover statute to non-judgment debtors." *Id.*; *see Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 322 (5th Cir. 2006) ("Texas courts construing the turnover statute have expressly and consistently held that it may be used to reach only the assets of parties to the judgment, not the assets of non-judgment third parties.").

Importantly here, "[t]here is little doubt that the Texas turnover statute cannot be used to litigate the property rights of third parties." *Resol. Tr. Corp. v. Smith*, 53 F.3d 72, 79 (5th Cir. 1995). As recognized by the Fifth Circuit, "a Texas appellate court concluded that it was improper to use the turnover statute to reach the assets of corporations which were allegedly alter-egos of the judgment debtors without a separate proceeding that pierced the corporate

veil." *Id.* (citing *United Bank Metro v. Plains Overseas Group, Inc.*, 670 S.W.2d 281, 284 (Tex. App.—Houston [1st Dist.] 1983, no writ)).   Thus, because the corporations at issue "are distinct legal entities that have substantive property rights in the assets in which they hold title," this Court "does not have the authority to adjudicate [their] substantive rights under the turnover statute." *Maiz*, 311 F.3d at 345 (citing *Resol. Tr. Corp.*, 53 F.3d at 77).   Rather, the corporations would have to be adjudicated as the alter egos of the Judgment Debtors through a "piercing-the-veil" judicial process before being subjected to turnover.  *See United Bank Metro*, 670 S.W.2d at 283–84 (holding that non-judgment debtor corporations should not be treated as judgment debtors based upon evidence that they are alter egos of judgment debtors without a prior trial on the merits that adjudicates the alter ego issue); *Bollore S.A.*, 448 F.3d at 324 ("Texas law is clear that Appellees must pursue their alter ego proceedings in a separate trial on the merits in the appropriate forum before using the turnover statute to reach Appellants' assets to satisfy the judgment against Ali Mackie."); *see also Maiz*, 311 F.3d at 345 n.10 (remarking that non-judgment debtor corporations "not being properly before the district court raises troubling due process concerns").

Accordingly, because the corporate veils of the three corporations at issue have not been pierced in a separate judicial proceeding, the Court **DENIES IN**

**PART WITHOUT PREJUDICE** the Receiver's Motion for Authorization to Sell Company Assets and to Retain Specialized Personnel (ECF No. 194) as to the corporations. The Court also **DENIES WITHOUT PREJUDICE** the Receiver's Motion for Supplemental Receivership Order (ECF No. 195).

However, the Court **GRANTS IN PART** the Receiver's Motion for Authorization to Sell Company Assets and to Retain Specialized Personnel (ECF No. 194) as to Nationwide. As noted by the Receiver, this Court has jurisdiction over Nationwide and its property. (*Id.* at 9–10 (citing Tex. Bus. Orgs. Code § 11.402(b))). The Texas turnover statute allows this Court to order the Judgment Debtors to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control and appoint a receiver to sell the nonexempt property in order to satisfy the judgment. *See* TEX. CIV. PRAC. & REM. CODE § 31.002(b).

The Receiver asserts that Nationwide has not filed a tax return or paid corporate taxes since 2020 (ECF No. 194 at 2) and that millions of dollars have been misappropriated from the company (*id.* at 10–11). In light of these circumstances, the Receiver seeks to sell Nationwide's assets, and to recover and protect what Nationwide intangible assets remain. (*Id.* at 10). The Receiver explains that the proceeds of the sale will pay the Court's judgment and six years of unpaid state and federal taxes. (*Id.* at 2).

Based on the foregoing, the Court finds the sale of Nationwide is appropriate. *Sec. & Exch. Comm'n v. Provident Royalties, LLC*, No. 3:09-cv-1238, 2009 WL 10678431, at *3 (N.D. Tex. Sept. 1, 2009) ("Because the Order Appointing Receiver empowered [the Receiver] . . . to take such action as necessary and appropriate for the preservation of the assets or to take such action as necessary to prevent the dissipation of the assets, the Receiver had the authority to conduct the sale."). The Receiver is also authorized to (1) hire an experienced business broker to assist in the sale[4] (*id*. at 3); (2) retain a CPA to prepare the corporate state and federal tax returns for the last six years (*id*. at 4); and (3) hire a new Chief Financial Officer to recover control and management of the company and its operations (*id*. at 5). (*See* ECF No. 101 at 8–9 (". . . the Receiver shall immediately have the . . . general powers and duties . . . to choose, engage and employ [third parties] as the Receiver deems advisable or necessary in the performance of the Receiver's duties and responsibilities under the authority granted by this Order.")).

III.   The Judgment Debtors' Motions (ECF No. 209–210)

Hollimon filed an Expedited Motion for Reconsideration of the Order Compelling Payment (ECF No. 205) and Advisory of Present Inability to

---

[4] The Receiver notes that he will facilitate appraisals if Hollimon and Tims object to the price and contend additional appraisals should be obtained. (ECF No. 194 at 3). Hollimon and Tims will be required to bear the cost of any such appraisals.

Comply.   (ECF No. 209).   Hollimon also filed a Motion for Expedited Consideration (ECF No. 210), which the Court **DENIES AS MOOT**.

On July 17, 2026, the Court ordered Hollimon to bring a cashier's check payable to the Receiver for $73,824.17 and provide it to the Court during the July 20, 2026 hearing.  (ECF No. 205 at 7).  Hollimon explains that he cannot comply with the Court's order because "every account he holds has been frozen, Nationwide cannot make payroll or fund operations, and a substantial portion of the funds the Order describes was itself transferred into a frozen account." (ECF No. 209 at 2).  Given that the money can be recovered through the sale of Nationwide in accordance with this Order, the Court will not impose sanctions against Hollimon at this time.  As such, the Court **GRANTS IN PART** Hollimon's Expedited Motion for Reconsideration of the Order Compelling Payment (ECF No. 209) as to the issue of sanctions but **DENIES IN PART** Hollimon's motion (*id.*) as to all other relief sought.

**SIGNED** in Houston, Texas on July 27, 2026.

_____
Richard W. Bennett
United States Magistrate Judge